IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LARRY CLONINGER,            )
                            )
            Plaintiff,      )
                            )
      v.                    )   No. 04-4098-CV-C-WAK
                            )
BEHAVIORAL HEALTH           )
CONCEPTS, INC.,             )
                            )
            Defendant.      )

## ORDER

Plaintiff Larry Cloninger brought suit against defendant Behavioral Health Concepts, Inc., (BHC) in May 2004, alleging he was wrongfully terminated from his employment in retaliation for engaging in protected activity. Cloninger states he was a witness in an investigation of gender discrimination alleged by a female coworker, and that he was fired shortly after he gave an adverse statement.

Defendant filed a motion for summary judgment on July 1, 2005. BHC asserts plaintiff cannot make a prima facie showing of retaliatory discharge because he did not engage in protected activity and he cannot show a causal connection between his activity and discharge. Further, defendant claims it had a legitimate, nonretaliatory reason for firing Cloninger.

Plaintiff responded in opposition to the motion for summary judgment, asserts judgment is not appropriate and states there are genuine issues of material fact for trial. Defendant replied.

### Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a

material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.*, 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. *Celotex*, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." *Hass v. Weiner*, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Discussion

Plaintiff Larry Cloninger was a leased employee utilized by BHC. Through a series of contracts[1], plaintiff worked at South Central Correctional Center (SCCC) and was subject to the personnel policies of the five parties to the various contracts.

Cloninger worked as a licensed professional counselor at SCCC between December 2001 and June 2003. One of his duties was to serve as the licensing supervisor for Patricia Garrett, who was a provisionally licensed professional counselor. On May 13, 2003, Garrett complained to BHC and Missouri Department of Corrections (MDOC) of sexual harassment

---

[1] BHC contracted with Daniel Forensic Psychiatric Services, L.L.C., who contracted with Correctional Medical Services, Inc., who contracted with the Missouri Department of Corrections to provide mental health care to inmates in the department's correctional facilities. BHC leased employees from Moresource, Inc.

2

and gender discrimination by Glen Marsey. Glen Marsey was an MDOC employee and Cloninger's supervisor.

In response to Garrett's allegations, MDOC notified BHC that it would conduct an investigation because the accusations were made against an MDOC employee. On June 5, 2003, Timothy Huesgen began the investigation. He spoke to plaintiff, and on June 11, 2003, asked him to complete a written question and answer statement.

The parties dispute whether Cloninger refused to complete or answer the written question and answer statement. It is clear, however, that Cloninger orally responded to Huesgen's questions but did not complete the written form on June 11, 2003. Plaintiff told Huesgen he wanted to contact an attorney before doing so. The parties dispute whether Cloninger was given a deadline for filling out and returning the form, and there is even some question as to what date was given. Cloninger was not given a copy of the form to take with him.

Nevertheless, on June 18, 2003, Huesgen completed his investigative report without the statement from Cloninger. He did not attempt to contact Huesgen to see if a written report was going to be submitted. Cloninger asserts he did not have a copy of the form to complete and that Huesgen did not return telephone calls or respond to e-mails when plaintiff attempted to obtain the form. On June 25, 2003, Cloninger faxed a completed written statement to defendant, based upon what he remembered as questions on the form.

After Huesgen completed his report, MDOC apparently notified Correctional Medical Services, Inc., (CMS), which then notified BHC, to terminate plaintiff's employment at SCCC, effective June 27, 2003, at 5:00 p.m.[2] MDOC concluded plaintiff failed to comply with MDOC policies which required employee cooperation in all investigations.[3] Management personnel stated Cloninger failed to cooperate when he did not complete the written question and answer statement prior to the close of Huesgen's investigation.

---

[2]BHC did so through Moresource, Inc.

[3]The MDOC manual, at section III.G.3, required employees to fully cooperate and to truthfully relate any knowledge of facts pertaining to matters under investigation.

3

Plaintiff believes he was terminated because he was an adverse witness during the investigation.

Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate against an employee on the basis of gender.  42 U.S.C.A. § 2000e-2 (West 2003).  It is also unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C.A. § 2000e-3(a) (West 2003).

Cloninger claims he was retaliated against because he assisted or participated in an investigation of sexual harassment and gender discrimination brought by a coworker against a supervisor.  The parties agree there are three basic elements required to establish a prima facie case of retaliatory discrimination.  First, plaintiff must show he engaged in a protected activity.  Second, plaintiff must have been the recipient of an adverse employment action.  Third, there must be a causal connection between the protected activity and the adverse employment action.  *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).[4]

Defendant seeks judgment as a matter of law because plaintiff cannot show he engaged in a protected activity.  BHC states that, at the time plaintiff was fired, a complaint had not been filed or an investigation commenced with or by the Equal Opportunity Employment Commission or the Missouri Commission on Human Rights.

The participation clause of 42 U.S.C.A. § 2000e-3(a) clearly requires an "investigation, proceeding, or hearing under this subchapter."[5]  Defendant acknowledges that the law in this circuit is not well defined, but asserts the court should find that the investigation, proceeding or hearing required by the statute does not begin until after a formal charge is filed with the EEOC or the Missouri Commission on Human Rights.

---

[4] The same standards apply to Title VII and MHRA retaliation claims.  *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 714 (8th Cir. 2000).

[5] The opposition clause, however, only requires that the plaintiff oppose any practice made unlawful by the subchapter.  Thus, the issue of whether an investigation or proceeding has begun does not come into consideration if the claim is brought pursuant to that clause in the statute.

4

Defendant cites cases from which this position might be inferred, and cases from other circuits where the law requiring a formal charge is more clearly defined. In contrast, there are circuits where plaintiffs do not have to file a formal charge prior to bringing suit under Title VII.

In *Brower v. Runyon*, 178 F.3d 1002 (8th Cir. 1999), the court noted this circuit has phrased, in various ways, the requirement that plaintiff had engaged in any manner in protected activity. It was found to be sufficient if plaintiff filed a charge of discrimination or complained of discrimination. *Brower v. Runyon*, 178 F.3d at 1005-06 (citing *Manning v. Metropolitan Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir. 1997) and *Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997)). The *Brower* court cited cases from other circuits which found as sufficient (1) contact with an EEOC officer who notified management officials that he believed a charge would be filed, and (2) conduct that was intimately related or considered an integral step in the process of making a formal charge. Because it was not necessary in the *Brower* case, the court declined to define for this circuit the precise point at which a Title VII proceeding or investigation begins.

Nevertheless, the court stated "[t]he participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights. Retaliation may have a chilling effect regardless of whether an employer acts after a formal complaint has been filed or after it knows one is to be filed. Not all discussions with individuals who are part of the Title VII grievance process or all informal complaints will amount to participation in a Title VII proceeding, however. At a minimum, there would have to be factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII." *Brower v. Runyon*, 178 F.3d at 1006. Thus, the court implies that in some circumstances, a formal EEOC complaint does not have to be filed, particularly if the employer knows that one is going to be filed.

In a later opinion, at least one Eighth Circuit judge touched briefly on the issue. Judge Colloton wrote, in an opinion concurring, in part, and dissenting, in part, that the participation clause sweeps more broadly than the opposition clause, but "the clause protects only participation 'under this subchapter' so participation in an employer's internal

5

investigation that is independent of the 'subchapter,' i.e., not pursuant to an investigation by the EEOC or its designee, is not covered." *Gilooly v. Missouri Dep't of Health and Senior Service, Division of Senior Service*, 421 F.3d 734, 742 (8th Cir. 2005). What is not clear from Judge Colloton's statement is whether he would consider an internal investigation that was prompted by an EEOC charge or threat of an EEOC charge to be related to or independent of the subchapter. The issue in *Gilooly* was whether the clause protected false and malicious allegations.

In general, however, the Eighth Circuit cases suggest that an informal complaint would be sufficient to bring the conduct within the protection of the participation clause, in circumstances such as these, if the informal complaint prompted an investigation for use in or preparation for an EEOC investigation.

Patricia Garrett clearly stated in the last sentence of the first paragraph of her ten-page memorandum to Michael Bowersox, Superintendent of SCCC, that she did "intend to file a complaint with the Equal Employment Opportunity Commission." (Doc. 30, Exh. H.) She tells Bowersox she had filed a formal complaint with defendant in the previous fall, but things had deteriorated since that time. She sets forth details of some of her claims of sexual harassment and gender discrimination. The memorandum ends with a comment that she did not want to, but felt it was necessary to file a complaint with the EEOC. She acknowledges that defendant had hired someone to investigate the matter previously but she did not know what information had been communicated to MDOC. She makes it clear that the matter had not been corrected and that she needed assistance in dealing with the situation.

At the summary judgment stage, this court must give the nonmoving party the benefit of all reasonable inferences drawn from the facts. Depending on what evidence is believed, a reasonable inference could be drawn that the MDOC investigation was prompted by Garrett's assertion that she was filing an EEOC complaint. Thus, the investigation falls within the protections of the statute and Cloninger was engaged in protected activity when he participated "in any manner" in the investigation.

Defendant next claims plaintiff cannot show a causal connection between his participation in the investigation and his termination. Defendant concedes the termination followed closely in time to plaintiff's interview during the investigation, but asserts there are

6

no other facts showing plaintiff's participation was a motivating factor in his discharge. Generally, there must be more than a temporal connection between the protected conduct and the adverse employment action to meet the third element of a prima facie case. *See Hesse v. Avis Rent A Car System, Inc.* 394 F.3d 624, 633 (8th Cir. 2005).

      Cloninger responds that he can show a causal connection when all the circumstances are considered. Particularly, plaintiff states he orally answered all of Huesgen's questions. He states that before Huesgen concluded the investigation and wrote his report claiming plaintiff failed to cooperate, Huesgen took no steps to find out if plaintiff intended to provide a written statement after consulting with an attorney. Plaintiff states Huesgen did not give him a deadline to provide the statement. Later documents submitted by the parties show other personnel gave plaintiff until 5:00 p.m. on June 25, 2003, to complete the written statement and to submit it to MDOC via Dr. Atwell.[6] Plaintiff also states he called and sent e-mails to Huesgen regarding the matter, and Huesgen failed to respond.

      Before Salke sent the e-mail giving Cloninger a final deadline to complete the statement, Huesgen had finished his written report which was unfavorable to Garrett and to Cloninger. Huesgen found Garrett and Cloninger to be untruthful, stated they had violated policies and procedures, and reported they were otherwise noncompliant with directions from their supervisors. In particular, Huesgen said they were "deceitful, dishonest and uncooperative during this inquiry." (Doc. 30, Exh. J.) The report was lengthy and very subjective. Plaintiff's termination appears to have been based upon this report and the records do not reveal whether other administrative personnel took any steps to corroborate the report before terminating plaintiff. Cloninger claims the negative comments about himself in the report were motivated by his responses, and that his support of Garrett during the investigation was a factor in his termination.

---

[6] Ralf Salke of CMS gave plaintiff this deadline via an e-mail sent to Bob Reitz of BHC on June 24, 2003. It indicated plaintiff would be suspended on June 26, 2003, if he did not complete the form. Bob Reitz of BHC forwarded the responses to Salke, Atwell, and others via an e-mail at 2:22 p.m. on June 25, 2003.

Defendant claims it had a legitimate reason for terminating plaintiff because MDOC determined that plaintiff had failed to cooperate and be truthful in the investigation. Thus, they assert plaintiff violated institutional policies.

Clearly, the parties differ in their positions on what occurred, they dispute the truthfulness of the report and they do not agree on the motivation behind the report and decision to terminate plaintiff. After considering the submitted evidence and the reasonable inferences that could be drawn from the facts, the court finds there are genuine issues of material fact for trial.

For these reasons, it is

ORDERED that defendant's motion of July 1, 2005, for summary judgment is denied [30].

Dated this 23rd day of January, 2006, at Jefferson City, Missouri.

/s/

WILLIAM A. KNOX
United States Magistrate Judge